and Nguoc Duong, numbers 14-10276 and 14-10294. Morning, Your Honors. My name is Candace Mitchell, and I represent Mr. William Wong. To the abbreviated nature of the argument, because I'm splitting time with my co-defendants counsel, I'm going to be primarily addressing the first and third arguments of the brief, the deliberate ignorance instruction and the restitution argument, reserving two minutes of my portion for rebuttal. As to the first issue, the deliberate ignorance instruction, in wire fraud prosecutions, such as in this case, where it's premised on false representations made by a defendant, the deliberate ignorance instruction is irreconcilable with the specific intent to defraud requirement. Can you pull the microphone down? By giving the deliberate ignorance instruction, it essentially lowers the burden of proof, of proving the intent to defraud. But haven't we decided this issue already in, I think, Jewell and Heredia? Your Honors, actually, I don't believe that's the case. In Jewell and Heredia, those two cases specifically referencing drug smuggling instances, it's different than in this case, where- But in Jewell, you have to, the question is whether or not you have knowingly imported into the United States controlled substances, right? Yes, however, with- So it has an element of a knowing violation in it as well. But there's a slight difference with wire fraud prosecutions, is that it's not just participating in a scheme or making false statements, it is making those statements with deliberate intent, that is to induce someone to participate in the fraud. But Heredia is a mail fraud prosecution. How does that differ from the wire fraud prosecution? In Heredia, the issue there was whether or not someone purposely brought in the drugs with the intent to distribute to someone else. But the- That's Jewell. That's Jewell. I'm talking about Heredia, it was a mail fraud. Oh, yes, Heredia, Your Honor, in that instance, it is still a drug case. I don't think it's a mail fraud prosecution. It's a 1341 prosecution, and here we're dealing with a 1343 prosecution, which are essentially the same crime. You're referencing Heredia 483 F3rd 913? That is a case regarding the possession of a controlled substance with the intent to distribute. You're right. You are absolutely right. But I thought we had a follow-on case that dealt with mail fraud. This specific issue with this specific question of intent is actually the first time this question's come before this court in the Ninth Circuit. Other courts have examined whether or not it is proper to deliver ignorance instruction previously. But when those courts have examined the issue, it has been typically towards the sufficiency of the evidence, whether or not the instruction was applicable in light of the sufficiency of the evidence presented. Here, we are looking at a different issue. Whether or not the intent portion of the intent to defraud means that it is appropriate to deliver ignorance instruction, especially in light of a case where the theory of the fraud case was based on making false statements. Here, because of the fact that an individual has to make a purposeful, conscious desire to defraud, that has to be shown, that is one of the requirements to show, a person who is deliberately ignorant of a fraud occurring cannot then make a purposeful, conscious, deliberately false statement in order to induce. Well, I'm not sure because first of all, you have to devise or intend to devise a scheme or artifice to defraud. So that is the intent element. And then there has to be a misrepresentation communicated by, in this case, wire in furtherance of the scheme to defraud. Is there not? There are the four elements of the wire fraud is that someone knowingly participated in a scheme. Right, but there first has to be the creation of a scheme or artifice to defraud. And the government's theory here was that these two men conspired and created a scheme to sell steel from Hurricane Katrina that they had no lawful title to and that they offered to sell it to the victim. So that was the scheme that they allegedly formed, was it not? But the jury then found that there was no conspiracy and there had been no conspiracy between the two individuals. But that doesn't matter because the jury convicted him of 1341, which establishes the scheme and artifice to defraud. The jury, in fact, convicted him of making a specific material false statement, not necessarily the creation of a scheme. Wasn't he convicted of a 1343 violation? It was the specific statement. Mr. Wong had a number of charges against him. Was he convicted of wire fraud or did I misread? Yes, he was convicted of wire fraud. However, the jury had to find that there was a scheme and artifice to defraud and that the statement that he made was in furtherance of that scheme or artifice. But in being instructed that they could do so under deliberate ignorance instruction, it lowered the government's burden of proof in being able to show that he made the statement with the intent to commit the fraud. No, all the government has to show is that under Heredia and Jewell, in a situation like this, that there were in existence a set of facts about which he was aware, which showed a strong possibility that the statement that he was making might not be true and that he deliberately avoided making further inquiry in order to determine whether or not it was true or false. And we said in Heredia and Jewell that it's appropriate to give a deliberate ignorance instruction on those facts in response to a charge that otherwise requires a knowing violation. The issue, though, then comes up to the intention of why the statement was made. In Jewell is a case that initially was brought up based upon just importation. And in Jewell, then Judge Kennedy, now Justice Kennedy, brought up the fact that his dissent. He was the dissent. But he. That's not the ruling of the court. But he addressed the same issue that is now before the court that is the first time that this. But that was the issue that did not carry a majority of the votes of the in-bank panel. That is not the law of the Ninth Circuit. But what should be the law of the Ninth Circuit is in instances where a fraud is precipitated on specific false statements that a deliberate ignorance instruction should not be given because it, in fact, removes the intent. It removes the government's burden of being able to show the intent. I'm not sure I agree with your characterization of what 1341 and 1343 criminalize. They criminalize the creation of a scheme or artifice to defraud and thereafter impose criminal liability on an action in furtherance of that scheme, which here amounts to a material misrepresentation that they, in fact, own the right to the steal. And that induces the victim to part with money and therefore the scheme comes to fruition. That's the crime that they were convicted of. The reason why the statement was made, and in this case, Mr. Wong's conviction was not based off of any assertion that he owned the right to the steal. It was a forwarding of an email that was purportedly sent by another member of the city of New Orleans. But his co-defendant testified before the jury that he actually knew. So if the jury credited that testimony, how can this possibly be error? It is error because the way the jury was instructed, and we don't know if the jury made their findings based on actual knowledge or under the deliberate ignorance instruction. But we've said that the convictions stand. Either way, under Jewell and Heredia. Jewell and Heredia failed to take into account the fact that by allowing a deliberate ignorance instruction it does not consider the purposeful intent needed by a statement. But your argument, counsel, with respect is we've got the law wrong and we ought to change it, right? My argument is in this kind of narrowly tailored instance that a deliberate ignorance instruction is inappropriate. I did find the case, it's U.S. versus McDonald and U.S. versus Price. Those were? Both of those cases, they considered deliberate ignorance instruction. However, both of those cases primarily were concerned with deliberate ignorance instructions in relation to sufficiency of evidence. They did not, however, go into whether or not the mens rea needed for the intent was an important aspect. I would turn the court to looking primarily at Chen, the Fifth Circuit case that we cite that does do this type of examination between merely, in Chen there was an instance where deliberate ignorance instruction was deemed to be inappropriate for the prosecution of maintaining a drug-involved premises based on the fact that there was an additional purpose that was required. There the court in the Fifth Circuit found that because the additional purpose required, the purpose that the person reasoned why they had maintained the drug site. What do we do, counsel, with this? As Judge Tallman mentioned, Mr. Zhuang testified that your client knew, and for example, he asked him for some documentation that he could take to what's called the Cherry Group or the investors, if you will, to give them confidence that the city had given permits and the like. So you have his testimony, you have the request for the documents, your client allegedly delivered the documents to the investor group. That's actual knowledge, that's not even deliberate indifference. So if there is, if the jury could find actual knowledge based upon the information, how do we treat, even under your theory, the deliberate indifference instruction? Well, I just wanna briefly clarify some of the factual issues. In this case, Mr. Zhuang testified that he had no knowledge that Mr. Zhuang had not secured rights to the property. I understand what he testified, but I'm just saying that in the evidence that came into the trial, Mr. Zhuang testified that he did know, and he testified that he did ask for these documents, and he testified that he got the documents and gave them to him to deliver to the Cherry Group. So it doesn't matter what your client, I mean, they could either believe or not believe your client, but the jury had before it information, evidence that it could rely upon for conviction based on direct personal knowledge on your client's part, right? I believe that the direct personal knowledge could become on Mr. Zhuang's behalf, but not necessarily on Mr. Wang's behalf. Mr. Wang only got his information from Mr. Zhuang, so he had- Also, if you and I entered into some kind of an agreement, we were gonna deliver an illegal substance, and we had a trial, and I said I gave her a bag filled with heroin, so much heroin, so that she could deliver it to X. You're saying that that information would not be sufficient to put the issue of your knowledge before the jury? I think that information would be sufficient, but that is a very different situation than this case, and I wanna make sure my co-counsel has enough time to be- I was just gonna say, you're eating into our time. Do you wanna try and answer? Just briefly, I think that this was a different factual situation with the way the information was presented to Mr. Wang from Mr. Zhuang. Okay, thank you. May it please the court, I'm Claire Leary, and I represent Mr. Zhuang, and I just, I've been trying to use these devices, and they work well while I'm sitting and listening, but not when I'm up here talking somehow. You're the last case on the calendar, so if you need a minute to- I'm sorry? You're the last case on the calendar, so if you need a minute to get set up, take your time. If Your Honor can allow that, that'd be great. Of course, yeah, of course. Thank you. I do apologize. It's a great device when it works. No apology necessary, go right ahead. I represent Mr. Zhuang. You've talked about him a little bit, Your Honors. Mr. Zhuang's defense, pretty much his sole defense, was that he did not intend to defraud the Cheery Way, as their name victims. While he did submit documents that were false, fabricated documents or fabricated things that he said, he didn't mean to cheat anybody. He didn't mean to defraud them. Because that was his defense, the introduction of damning, irrelevant, highly prejudicial, and unvetted evidence about, or from a witness called Zapiro, was, destroyed the defense and left Mr. Zhuang. And that was elicited on cross-examination by Ms. Mitchell of Mr. Zapiro? That's right. Zapiro was a government witness. Ms. Mitchell cross-examined him and used Mr. Zapiro to establish her defense, which was that her client, Mr. Wang, was duped by Mr. Zhuang, my client. And that my client was, as Judge Ilston put it, paraphrasing the theory of defense, a silver-tongued devil, or such a silver-tongued devil, that people would continue to do business with him despite the fact that he had let them down or cheated them or not fulfilled his promises. That evidence was, as I said, not vetted by the court. Well, the court did hold, I think the court actually called for the sidebar when this issue arose, because apparently there was no immediate objection made, and the court essentially wanted to know of Ms. Mitchell, where are you going with this line of inquiry? And that was what, as I understood it, produced a ruling which limited what Ms. Mitchell could elicit from Mr. Zapiro. Do I understand the record correctly? Your Honor, I objected. I think I missed a beat with one objection. The next question, I did object. There were perhaps two- I'm not suggesting you've waived the objection, but it seemed to me that the district judge was as sensitive to this issue as you are, and essentially wanted to know from Ms. Mitchell, where are we going with this line of inquiry? I don't dispute Judge Ilston's credibility. We had a few sidebars on this, Your Honor. We had much discussion on it, and it was, while Ms. Mitchell was perhaps limited, Mr. Zapiro got to testify that my client, Duong, had used his credit card without authorization and had racked up, I think, $85,000 in unauthorized charges, that he'd also lent Mr. Duong money, and that 10,000, more than 10,000 of it had never been paid back. Those were, as I said, the veracity of those claims was never established. The judge did not weigh whether those things happened or not. I thought that, I'm sorry. No, no, go ahead. It looks like she did at one point weigh, because she said that's 403. She wasn't gonna let references to that come in. However, it seemed like when the judge found out where this was headed, as Judge Tallman said, she wanted Ms. Mitchell to recharacterize the conduct that Mr. Duong, apparently, and Mr. Zapiro had engaged in with each other. And so she recharacterized it as this ability to persuade, I think is what she said. And so then it was limited to that. I'm curious, did you file a motion to sever? I did not file a motion to sever, Your Honor. I didn't understand that that's what the defense would be, or that that's what the- Did you ask for a motion to sever at any time during the trial? No, Your Honor, I did not. I did ask that the evidence be excluded because it wasn't relevant, and it had no theory. There was no theory of relevance to support it. Let's just say that, assume, argue into that you're right, that there was, that it wasn't relevant under 404B, or it wasn't relevant at all. Would we look at it under a plain error review? I think you did miss some objections when you needed to object. Would we look at it under plain error? Yes, Your Honor, under plain error. And I believe that I only missed that one objection for one moment, if I'm not mistaken, and then I did object to all of it. And nonetheless, after Ms. Mitchell had been told to not go into numbers, for instance, the numbers came back again, not from me, but from Ms. Mitchell. Further, it was argued to the jury, and that exacerbated the problem. The judge, Judge Elston, let the testimony in, ultimately, as bias. And I did object to that as well, arguing that that just made no sense, that bias. But that was, bias seemed to relate to the civil lawsuit that had taken place between Mr. Zapparo and Mr. Duong. So it seemed like that's where Judge Elston's justification for that was based on, that's what it was based on. Do you agree with that? I don't agree, Your Honor. I see what you're saying, but there was a mass of lawsuits, and Judge Elston felt, perhaps rightly so, that there was a lot of bad blood between various parties and witnesses. And pre-trial, talk about evidence on other lawsuits was excluded, and we were told not to go into that. I thought that we weren't going to go into it. The, allowing it in, that there were these credit card, this credit card theft, in reality, that was, I don't see how that went to show that he was a biased witness. It turns on its head, the purpose of bias. Of course, if he hadn't been permitted to testify about those things, he wouldn't need to be impeached as to his bias. He could have just not talked about the litigation, and then that would have been the end of it. This evidence went directly to Mr. Duong's intent, and then a 404-B instruction was given, which made it all the worse. So, then the jury had heard this. You say this evidence, what evidence are you talking about? You say this evidence that went to Mr. Duong's intent. Yes, the evidence that Mr. Duong had allegedly, but it was not proven, taken Mr. Zepero's credit card, and racked up tens of thousands of dollars in unauthorized charges, and then not paid him for it, that he had taken a loan out, and then not paid him back that amount of money. Those things could not possibly have shown that Mr. Zepero was biased. They showed that Mr. Duong had engaged in wrongdoing, and yet I had no way to counter that. I could not establish that those things hadn't happened, that Mr. Zepero was not telling the truth. In the normal course of events, if a party was trying to introduce that testimony, then the judge would have vetted it, would have decided whether it really did, whether it really was substantiated, whether its prejudice, whether its probative value outweighed its prejudice, and here it did not. Ms. Mitchell, Mr. Wong had all kinds of evidence to try to show that he had been persuaded by Mr. Duong, that he had somehow fallen prey to him, if that was their defense. And indeed, Judge Ilston herself found that Mr. Duong did not intend to defraud. Now, of course, she was not the trier of fact, and I recognize that, I understand that, but here a jury did not have the benefit of a seasoned jurist looking at the testimony and trying to weigh it. They only heard that Mr. Duong was a bad guy because he stole it. You filed a post-trial motion to set aside, and she denied that. I filed a Rule 29 motion, and I also filed a motion at the close of evidence, Your Honor. Okay, all right. I'd let you both go over it. Let's hear from the government. Thank you. May it please the Court. Good morning, Your Honors. Owen Mardekin, arguing for the United States. The district court's evidentiary rulings, jury instructions, and restitution order in this case were not an abuse of discretion. I'd like to take the defendant's arguments in turn, first discussing Defendant Duong's argument about the deliberate ignorance instruction. Indeed, this court, two panels of this court, in McDonald and Price, have both held in the mail fraud context that a deliberate ignorance instruction was, or deliberate ignorance as a proof of knowledge was appropriate. It was not dicta in those cases. In both of those cases, which involved sufficiency of the evidence, the court first held that deliberate ignorance was appropriate in the mail fraud context, and then evaluated the evidence in light of that determination. So it wasn't dicta. Heredia, which came later, wasn't just about narcotics. Certainly it was a drug case, but at that point, when this court had already applied deliberate ignorance outside the narcotics context, and in Jewell, when this court had realized that courts throughout the country had applied the instruction in many different contexts, it would have been a huge turn in precedent for the court to go en banc and say that this instruction is only allowed in narcotics cases without ever making that clear in the opinion. I thought Jewell was one of the first cases in the country to really address this, and then other circuits started following suit. Isn't that the way it worked, time-wise? Well, it was an early case, and Jewell kind of became the verb, or the noun that was associated with the instruction. Because other circuits picked up on it, just like we talk about, what is that Second Circuit case that we're always referring to? Well, there are a couple of them. It doesn't matter. But the point here is that Jewell was a 1976 Ninth Circuit en banc decision, and then we revisited the field in 2007 in Heredia, and essentially reaffirmed Jewell. So the doctrine's been around this circuit for a long time. It has been, but my- We're in between, Your Honor. Correct. My point with Jewell was that it wasn't first. In footnotes 12, well, really footnote 12, but also footnote 13, the court does a survey of the circuits. So it had come up. Jewell just became sort of the gold standard, or the adjective, as it were, that went along with this instruction. So there's no indication here that this circuit, this panel isn't bound by anything other than what the court said in MacDonald or in Price when it held deliberate ignorance appropriate in this case. And the issue of specific intent versus knowledge, of course, is no different than Heredia, where you have possession, knowing possession with intent to distribute. And the court didn't find that to be in conflict. I think the court would have to go en banc again to revise that precedent. Now, to move along then to the evidence in this case, the sufficiency of the evidence argument that the defendant brought up was directed just to deliberate ignorance, or I'm sorry, just to actual knowledge. But really, there was sufficient evidence, as this court noted during the defendant's arguments, to show actual knowledge as well as deliberate ignorance. Duong's testimony, these pretend phone calls that both Duong and Duong were making and that were clearly not connected to any real party. These fictitious meetings that the evidence is that both Duong and Duong said that they were going to. And finally, the two versions of a forged document from the city that were both found by the FBI when they executed a search warrant in Duong's house on his computer. So there was ample evidence for the jury to find either actual knowledge or deliberate ignorance. Let's talk about the evidence that came in later with respect to Mr. Duong. It seemed like there was a lot of confusion and then also some rulings that I just wanna make sure I ask you about because I'm not quite sure I understand what happened. It seems like the district court admitted evidence of Mr. Duong's prior misbehavior, I don't know what to call it, in his business relationship with this person, Mr. Zapparo. Correct. And it seems like that was done, according to the district court, to show that Duong was able to persuade people to work with him despite Mr. Duong's bad conduct. Because there was a reference to a credit card being used by Mr. Duong without the permission of Mr. Zapparo and he was making these casting aspersions at the very least, if not specifically referring to specific prior bad act. So I guess I just wanted to find out from you, is this the proper purpose of other act evidence under Rule 404B, this prior ability to persuade, or does it come closer to proving some aspect of Mr. Duong's character? No, I think, and I don't know if defense counsel misspoke, but as she just said when arguing this morning, she said the credit card theft goes to Mr. Duong's intent, which I agree with. Mr. Duong made his intent central in this case. He said, well, I didn't mean to fool anybody, I was working hard to get this to be. But the district court didn't let it come in as evidence of intent. Well. She's curved everybody. She saw what was going on and she put the brakes on and she said, oh, well, where are we going here? And then she asked it to be rephrased in a way that dealt with his ability to persuade and I'm just trying to figure out where does that fall under what exception does that fall? I think it would also come in as plan, motive, absence of mistake, that he's not, his entire defense was, I didn't intend to hurt anyone. The defense that Duong was putting on. Is that what you argued? Did you argue that would come in? Because I didn't see your argument that it should come in under plan. Well, we, to make this clear, I mean, the government wasn't the proponent of this evidence but when the issue was argued on the motion for mistrial, and this is roughly beginning at about page 1620 of the Duong excerpts of record where Duong makes the motion for mistrial, the government made that point that this was an MO, a modus operandi, the silver tongue idea, and that was the government paraphrasing Duong's argument for why it should come in, that it was Duong's defense and of course, Duong has, in addition to the evidentiary rule, the due process right to put on a defense. So the government made the point at about page 1626 or so in its argument that that was what Duong intended to do, was to say that this was a part of the MO. And the court then, in its final ruling, says, well, I'm adopting what the government, the way the government phrased it. That's about page 1627. But earlier during that argument, I would disagree with the defendant's point that the court never vetted this under 404B because the court did make the comment, and this is about page 1623 or four in context of the same argument. The court said, well, wait a minute. Are you saying this is improper under 404B? Because I don't see it. I don't see how this is wrong under 404B. So the court was clearly thinking about that specific rule and then was thinking about prejudice when the court said, made the silver tongue comment that this goes to the silver tongue defense. And then said, but this is the prejudice because Duong then objected, well, but this is very prejudicial, raising, I think implicitly, the 403 argument. And the court says, how is this prejudice anything more than trivial in comparison with the other evidence that was unobjected to that came in in this case? So I think what the court is looking at is, you know, very simply, the 404B ruling, which is a simple ruling. Does it come in under one of these enumerated exceptions? Well, let's just say, let's, we disagree with you. Was it harmless? It is harmless. Why? For the reason that the court stated. This is trivial. This is trivial. Duong essentially confessed on the stand. Duong said, well, because he's talking about, he said, I told Duong we didn't have this deal. I said, I, you know, the question was, well, did he know these were forged documents and Duong says, well, I guess so. I mean, he must've known we were just trying to keep the client happy. So Duong essentially has confessed on the stand. All of this evidence has come in that is, I mean, it's almost to the point of, in some points, being humorous of the people climbing under a fence, sneaking into Six Flags and then pretending that they have the right to be there, of these fake phone conversations and these fake meetings. So with all of that evidence, this really is, and I think the judge had realized it at that point, even though Duong had not yet testified. This is, it's trivial. Now, and of course, the judge instructed the jury properly. The bias issue Duong raised, because when the court first said that this evidence about the silver tongue defense could come in, Duong responded, well, I wanna bring in the lawsuit. And the court said, well, okay, you can bring in the lawsuit but only to show bias and I'm gonna instruct the jury on it. So then when, at about page 1560 of the record, Duong's counsel does bring up the lawsuit, the judge stops and gives the limiting instruction. And then, of course, in the final instructions, the judge instructs both on bias as well as 404B. Now, just to back up very briefly, to some issues that were not raised, the restitution issue that Duong raises is governed by this court's decision in Booth. Duong and Duong were both convicted of participating in a scheme. This court has cruelly held that restitution for the damages caused by the entire scheme is appropriate, even if a party is acquitted of some of the counts. And then finally, 1028A, the argument about a means of identification, I think, I mean, this court's precedent and the statute make it very clear. So the 404B evidence issue, I think, was a very kind of classic example of a district judge in the heat of trial balancing Duong's interest in putting on a defense and getting in some relevant evidence versus Duong's interest in impeaching with this bias evidence and in narrowing the focus and limiting prejudice. So the court was making that decision on the fly and it was within her discretion. With that, I think that the jury instructions in this case are supported by law and were also not an abuse of discretion and would ask the court to affirm. Let me ask you about the restitution. Yes. Because in the restitution order, the district court found that both Mr. Duong and Mr. Duong participated in the Six Flags scheme. Yes. And therefore imposed the joint and several liability, but she didn't find specifically that Mr. Duong's role was essential. So I'm just trying to figure out, was that error? No. She found that Duong, and he was actually convicted, or Duong as well, was convicted of participating in this scheme. And that as part of this scheme, these certain delineated damages were incurred by the victims. And therefore, that he can be joined and severally liable for those damages arising out of that. But I thought the district judge observed that he was the key in communicating with the Chinese victims, because he spoke Chinese, and Duong is Vietnamese. And so the only way that Duong could communicate was through Duong. Didn't I see that? Yeah, that's true. He was key in communicating to the Chinese. So in terms of sort of keeping the Chinese happy so that the victim didn't discover the fraud any sooner than it did, doesn't that, as a matter of law, suffice to support the district court's conclusion that he was an active participant in the scheme to the fraud? Yes. It does. So I don't, I mean, I don't see under boot how there's any problem with what the district court did in this case. Unless your honors have more questions. Anything further? I think not. Thank you very much. Ms. Mitchell, I'll give you each a couple minutes on rebuttal. Just briefly, speaking to the deliberate ignorance instruction again, both McDonald Price and Heredia, in McDonald and Price, two cases where the deliberate ignorance instruction was given in a mail fraud case, neither examined the issue of the mens rea that we specifically bring up with the intent to defraud issue. How can you say that if the issue in the case is the giving of a deliberate ignorance instruction and the court examines the giving of the instruction and also looks to make sure that there was sufficient evidence to support the giving of it? I mean, how can you say that that doesn't support the government's position that it's appropriate to give it in a fraud case? In those instances, what the court was looking to was whether or not there was sufficient evidence that the defendants had turned a blind eye, that there was sufficient evidence that somehow they had become willfully blind, not specifically towards what our issue is. But in light of Jewell, why would a panel of our court have any reason to question the propriety of giving that instruction, even though the appeal in those two cases focused on the sufficiency of the evidence to support a jury's finding that they were willfully blind? Because this is the first instance that this court has had the opportunity to examine this particular issue about the mens rea. And because of that, I believe that this court can make that finding that the mens rea element of the intent prohibits deliberate instruction. So you would like to see a published decision coming out of this panel to address that issue? Yes, specifically that issue. Speaking briefly to the restitution issue, in Booth, restitution was done based on the fact that the court found that there was sufficient evidence to support the district court's finding that the co-defendant played an essential role in the fraudulent scheme. The jury didn't. You heard what I said to Mr. Martique, and why isn't that an essential role? If his job is to mollify the victim so that the victim doesn't discover that they're being defrauded, isn't that a pretty important part of the scheme? I don't believe that's the case, and I don't believe the jury found that that was the case, in light of the fact that the jury acquitted Mr. Wong of all of that conduct, and instead convicted him solely as to one count towards the end. The district... Okay, I've got your point. All right, let's hear from Ms. Leary. I have two points to make about the intent issue, and then about the bias issue. The government states that the district court properly weighed and admitted testimony of Duong's prior frauds to show his fraudulent intent after Duong placed his intent in issue. This is from the government brief. And there's no cite, and that's because there is no cite. The court did not weigh and consider Rule 404B in deciding to let this in. That isn't what happened, nor did the government below argue that it was or it wasn't admissible under 404B. I thought he quoted to us a portion out of the statement made on the record while the district court was considering whether or not to admit this line of questioning, and they're citing to provisions in 404B, are they not? No, Your Honor, the court... We'll look at the record. I guess that's the best way. Go ahead to your next point. My understanding of what was going on was that Judge Elston let this in for bias and as part of Ms. Mitchell's defense, but there's nothing that states that a defendant can use anything in the world, no matter how prejudicial, for their theory of defense. It was not vetted under 404B, and now the government argues it and says, well, the defense didn't talk about whether these were temporarily related. The defense didn't explain why this does not go to show intent. It doesn't. This is not the type of intent evidence that the court would consider under 404B. The intent to take money from one's business partner or to use their credit cards, if it were true, and it's not, is not the same as the intent to defraud a victim. The level of intent is not the same, and one is not relevant to the other. It is mere prejudice. Okay. I didn't bring up bias. Counsel. Not at all. Thank you, Your Honor. Counsel, you are out of time. The case just argued is submitted, and we will be adjourned until 9 a.m. tomorrow morning. All rise. Hear ye, hear ye. All persons having had business before the Honorable, the United States Court of Appeals for the United Circuit, will now depart. This court for this session now stands adjourned.
judges: Tallman, Smith, Murguia